## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROSALIND CASTRO<br><br>Plaintiff,<br><br>v.<br><br>JORGE R. ORTIZ–PADILLA;<br>YATES-BIRD LLC;<br>INSURANCE COMPANIES XYZ<br><br>Defendants. | **Civil No. 2025cv1642**<br><br>**Personal Injury; Diversity; Jury Trial Demanded** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiffs, Rosalind Castro, by and through the undersigned counsel, and hereby files this Complaint and allege as follows:

### INTRODUCTION

This is a personal injury action stemming from a rear-end motor vehicle collision on November 26, 2024, on Manantiales Street in Mayagüez, Puerto Rico, caused jointly by: (1) the negligent operation of a public car by Defendant Jorge R. Ortiz-Padilla, in which Plaintiff was a paying passenger; and (2) the negligent creation of a dangerous and unmarked construction-zone hazard immediately after a curve by Defendants John Doe (property owner), , and Corporations ABC (entities responsible for construction and traffic control). Defendants Insurance Companies XYZ are directly liable under Puerto Rico's Direct Action Statute, 26 L.P.R.A. § 2003.

As a result of Defendants' negligence, Plaintiff Rosalind Castro suffered significant physical injuries—including head trauma, cervical injuries, abdominal pain, left hand trauma, left foot trauma, and associated soft-tissue injuries—requiring emergency medical evaluation, radiographic imaging, medications, and resulting in ongoing pain, functional limitations, and emotional damages.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district.

3. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for all Puerto Rico law claims.

## PARTIES

4. Rosalind Castro is an adult individual and resident of New York.

5. Jorge R. Ortiz–Padilla is an adult resident of Puerto Rico and a public car driver operating a 2005 Scion, license plate 0018-TC.

6. Yates-Bilrd LLC is a limited liability company creataed under the laws of the Commowealth of Puerto Rico and at all relevant times herein was the contractor responsible for traffic control, roadway obstruction, construction operations, and failure to place warning devices or flaggers.

7. Insurance Companies XYZ are the unknown insurers who issued liability policies to Ortiz-Padilla, John Doe, Richard Roe, and/or Corporations ABC, and are liable under the Direct Action Statute, 26 L.P.R.A. § 2003.

## FACTUAL ALLEGATIONS

10. On November 26, 2024, Plaintiff was a paying passenger in Ortiz-Padilla's public car traveling northbound on Manantiales Street, Mayagüez.

11. Upon approaching a curve, the vehicle encountered an unmarked construction zone on a house located in the interseaction of Manantiales and Santa Teresa streets, where traffic had come to a sudden stop immediately after the curve.

12. On information and belief, Yates-Bird was the contractor working on the house and responsible for temporary traffic control.

13. Yates-Bird failed to place flagger, cones, signs, or drums at the lower approach to the hill, resulting in zero pre-curve warning to motorists ascending toward the obstruction.

14. The construction site was further unsafe because the only flagger present was positioned on the opposite side of the roadway, not in the proper advance-warning location required by applicable standards, and was therefore unable to effectively alert approaching traffic before the curve.

15. Immediately after the accident, Yates-Bird personnel admitted at the scene that no traffic indicators had been placed at the bottom of the hill, confirming the absence of required advance warnings.

16. Defendants John Doe, and/or Corporations ABC had created a hazardous condition by:

   a. failing to install slow-down signs,
   b. failing to place cones,
   c. failing to deploy flagmen,
   d. failing to provide advance hazard warnings,
   e. violating basic traffic-control and roadway safety principles,
   f. leaving motorists with no opportunity to brake safely after a blind curve.

13. Defendant Ortiz-Padilla was driving inattentively, too fast for conditions, and without keeping a proper lookout.

14. Ortiz-Padilla failed to maintain a safe distance and rear-ended the stopped vehicle immediately in front of him.

15. Plaintiff's body was forcefully thrown inside the car, striking her head, abdomen, left hand, and left foot, and causing her to lose conciousness for several minutes.

16. She was transported to Hospital San Antonio with complaints of:

   a. head trauma

   b. left hand pain

   c. feet pain

   d. abdominal pain and epigastric tenderness

   e. dizziness

   f. weakness

   g. generalized musculoskeletal pain.

17. The emergency department documented:

   a. epigastric pain on examination

   b. traumatic pain of the left hand and feet

   c. head injury complaints

   d. cervical tenderness and degenerative cervical changes aggravated by trauma

   e. need for imaging due to traumatic mechanism of injury

19. Plaintiff continues to suffer:

   a. persistent headaches

   b. cervical pain

   c. pelvic pain

   d. left hand and feet pain

   e. abdominal pain

      f. functional limitations

      g. difficulty walking and performing daily tasks

      h. emotional and physical distress

21. Plaintiff continues to suffer persistent neurological symptoms, including headaches, dizziness, concentration difficulty, and intermittent cognitive fatigue.

22. Plaintiff also suffered a partial tear of right foot plantar plate as a result of the accident.

23. Pelvic pain developed and worsened over time with MRI findings of osteitis pubis and bilateral labral tears, diagnosed as resulting from the accident.

24. As a result of the accident, Plainitiff suffers right and left thumb pain, bilateral hand paresthesias, swelling, weakness, grip difficulty, requiring ongoing therapy for both hands.

25. Billateral hand symptoms include chronic pain, swelling, joint findings, and reduced function attributable to the accident.

26. Neurological examination documents ongoing subjective cognitive concerns, including problems with attention, mild forgetfulness, word-finding delays, and difficulty with multitasking since the accident, symptoms consistent with post-traumatic sequelae.

27. Plaintiff continues to suffer post-traumatic headache syndrome and persistent post-traumatic symptoms requiring continued monitoring and treatment.

28. Plaintiff's neurologist has recommended ongoing evaluation, including further imaging (MRI brain), due to continued symptoms almost one year after the crash, confirming the chronic nature of her post-traumatic condition.

29. Plaintiff's gait, balance, and coordination remain affected, requiring further evaluation for post-traumatic vestibular dysfunction.

30. Plaintiff remains under active neurological care due to persistent headaches, cognitive complaints, and neck pain, which in the neurologist's opinion remain consistent with her reported

traumatic mechanism of injury and represent chronic post-traumatic sequelae requiring continued management.

31. As a result of these persistent neurological symptoms, Plaintiff has suffered loss of concentration, reduced productivity, sleep disruption, and reduced functional capacity in her daily activities.

32. MRIs of the Cervical Spine revealed traumatic abnormalities directly caused by the collision, including straightening of the normal cervical lordotic curvature, a finding consistent with post-traumatic muscle spasm, ligamentous strain, and cervical soft-tissue injury.

33. The MRIs further demonstrated a central disc protrusion at C5–C6, reflecting acute traumatic displacement of disc material and correlating with Plaintiff's post-accident neck pain, headaches, and radiating discomfort.

34. The MRI also revealed multilevel cervical disc bulges at C2–C3, C3–C4, C4–C5, and C6–C7, which, although degenerative in origin, were aggravated, exacerbated, and made symptomatic as a result of the traumatic forces of the collision.

35. The MRI showed mild multilevel spinal canal stenosis at C3–C4, C4–C5, C5–C6, and C6–C7, which was rendered clinically significant and symptomatic due to trauma-induced inflammation and soft-tissue swelling.

36. The MRI findings also included foraminal narrowing at multiple cervical levels, which, although partially degenerative, became symptomatic following the collision and contributed to Plaintiff's radicular complaints.

37. The MRI noted uncovertebral joint hypertrophy, a degenerative process which was aggravated and rendered painful due to the traumatic mechanism of the crash.

38. These traumatic and aggravated degenerative findings are consistent with Plaintiff's persistent symptoms, including chronic cervical pain, headaches, restricted range of motion, radicular discomfort, and neurological dysfunction.

39. Plaintiff's injuries are directly and proximately caused by the combined negligence of Ortiz-Padilla, the construction entities, and the property owner and contractor.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE AGAINST JORGE R. ORTIZ–PADILLA

22. Plaintiff realleges all prior paragraphs.

23. Ortiz-Padilla owed a duty of reasonable care as a public car driver under Puerto Rico law.

24. Ortiz-Padilla breached that duty by:
    a. driving at an unsafe speed
    b. failing to maintain safe distance
    c. failing to keep proper lookout
    d. failing to brake prudently
    e. failing to react to roadway conditions
    f. failing to operate the public vehicle safely

25. His negligence was the legal and proximate cause of Plaintiff's injuries.

### COUNT II – NEGLIGENCE AGAINST YATES-BIRD LLC

29. Yates-Bird was responsible for the construction site's active operations and traffic control.

30. Yates-Bird ABC failed to comply with industry standards, failed to place warning signs, and created an unreasonable and dangerous condition directly causing the collision.

31. Yates-Bird was charged with construction operations and traffic control.

32. They negligently failed to comply with:

   a. Manual on Uniform Traffic Control Devices safety standards

   b. basic roadway safety obligations

   c. duty to warn drivers before a blind curve.

33. Yates-Bird personnel failed to station any traffic personnel or warning indicators at the bottom of the hill, thereby providing no advance notice prior to the blind ascent.

34. The only traffic control person present was standing at the very top of the hill, immediately next to the obstruction, providing inadequate reaction time for approaching motorists.

35. When questioned by Ortiz-Padilla, construction personnel admitted that no traffic indicators were placed at the bottom of the hill and failed to provide a supervisor or manager to address the safety lapse.

36. The Manual on Uniform Traffic Control Devices ("MUTCD") establishes mandatory minimum safety standards for all temporary traffic control ("TTC") zones, construction zones, lane closures, roadside work, and roadway obstructions.

37. MUTCD § 6C.02(1)–(4) requires the placement **of** advance warning signs before any construction activity or roadway obstruction, including a sequence of signs such as "ROAD WORK AHEAD," "BE PREPARED TO STOP," and "FLAGGER AHEAD," positioned at minimum required distances adjusted for roadway curvature, speed, and sight-line limitations. Defendants placed no advance warning signs whatsoever before the curve.

38. MUTCD Table 6C-1 requires increased advance-warning distances where a work area lies beyond a curve or where sight distance is reduced. Defendants placed no signs before the curve, in direct violation of Table 6C-1.

39. MUTCD § 6B.01 and § 6C.01 require implementation of a Temporary Traffic Control Plan ("TTCP") designed to ensure that motorists receive timely and adequate warning and a safe, predictable transition into the TTC zone. No TTCP was implemented.

40. MUTCD § 6F.63–6F.71 requires the installation of channelizing devices—including cones, drums, barricades—and the establishment of a taper and buffer space *in advance of* the work area. Defendants provided no channelizing devices, taper, or buffer space before the curve.

41. MUTCD § 6E.01–6E.07 requires flaggers to be placed where sight distance is limited or where traffic must be slowed or stopped unexpectedly. Flaggers must be placed in advance of the work area, not at the point of hazard. Defendants placed a single flagger only after the curve, immediately at the work area, in violation of the required advance placement.

42. MUTCD § 6C.06 and § 6C.08 require adequate buffer space and taper length to allow motorists to perceive the hazard and decelerate safely. Defendants provided no buffer space or taper before the curve.

43. MUTCD § 6A.01(2), (4), and (5) require TTC setups that warn road users of conditions ahead, provide gradual transitions, and avoid unexpected situations requiring sudden maneuvers. Defendants placed only a single drum and a flagger directly at the work area, after the curve, creating a sudden and unexpected hazard.

44. MUTCD § 6B.01(4) prohibits TTC configurations that produce unexpected hazards or conditions that do not allow reasonable driver perception-reaction time. The placement of the only warning devices immediately at the point of danger violated this provision.

45. Defendants' failure to place advance-warning signs, tapers, buffer zones, and flaggers before the curve, and their improper placement of the only warning devices at the work area itself, directly created an unreasonably dangerous condition that prevented motorists traveling northbound

on Manantiales Street—including the vehicle operated by Defendant Jorge R. Ortiz-Padilla—from perceiving and reacting to the stopped traffic ahead.

46. These MUCD violations were a direct and proximate cause of the rear-end collision and Plaintiff's resulting injuries.

33. Their conduct was a substantial factor in creating the hazard that caused the collision.

### COUNT III – DIRECT ACTION AGAINST INSURANCE COMPANIES XYZ

34. Plaintiff invokes her right under 26 L.P.R.A. § 2003.

35. Insurance Companies XYZ issued liability policies to one or more defendants and are jointly and severally liable for the damages caused by their insureds.

### DAMAGES

36. Plaintiff suffered and continues to suffer:

    a. physical pain

    b. emotional distress

    c. head trauma

    d. cervical injuries and limitations

    e. abdominal and epigastric pain

    f. left hand functional impairment

    g. left foot pain and gait limitation

    h. loss of enjoyment of life

    i. loss of mobility

    j. anxiety, discomfort, and trauma-related distress

    k. medical expenses past and future

    l. impairment and disability

37. All damages exceed $75,000.

## TRIAL BY JURY

38. Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment jointly and severally against all Defendants for:

    a. Compensatory damages in an amount to be determined by the jury;

    b. Past and future pain and suffering;

    c. Medical expenses past and future;

    d. Emotional distress damages;

    e. Loss of enjoyment of life;

    f. Pre-judgment and post-judgment interest;

    g. Costs, attorney's fees, and all remedies available under law;

    h. Any other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED. In San Juan, Puerto Rico, this 25th day of November, 2025.

s/ Alberto J. Castañer-Padró
Alberto J. Castañer-Padró
USDC 225706
**Castañer & Baella PSC**
MAI Center
771 Calle 1, Ste 204
San Juan PR 00920
Fax 1 888 227 5728
Tel 787 707 0802
alberto@castanerlaw.com